IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-00146-CMA-KLM

CINCINNATI INSURANCE COMPANY,

    Plaintiff,

v.

ROCKY MOUNTAIN WATER WORKS, LLC,
KENNETH P. ZETYE,
REBECCA J. ZETYE,
NATHAN R. MILLER, and
JENNIFER N. MILLER,

    Defendants.

---

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

---

This matter is before the Court on Plaintiff Cincinnati Insurance Company's Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. # 16.) Defendants have not filed a Response. For the following reasons, the Motion is denied.

## I.    BACKGROUND

This is a surety indemnity case in which Plaintiff issued surety bonds on behalf of Defendant Rocky Mountain Water Works, LLC ("RMWW") pursuant to an Agreement of Indemnity ("the Agreement") that Plaintiff entered into with Defendants. (*Id.* at 4.) In exchange for Plaintiff's promise to pay certain debts on RMWW's behalf in the event that a creditor made such a demand, Defendants agreed to "defend and indemnify [Plaintiff] from any losses and reimburse [Plaintiff] for its actual and anticipated losses

arising out of bonds issued on behalf of RMWW," and to "grant access to their financial records and make certain assignments to further protect [Plaintiff's] interests." (*Id*. at 5.)

After receiving and paying several bond claims from RMWW's creditors, Plaintiff requested that Defendants "comply with their contractual obligation to defend, indemnify, and reimburse [Plaintiff] and post collateral in an amount sufficient to cover [Plaintiff's] actual or anticipated losses." (*Id*.) However, Plaintiff alleges that Defendants failed to do so.

In the instant Motion, Plaintiff is seeking preliminary injunctive relief against Defendants RMWW, Nathan Miller, and Jennifer Miller ("Miller Defendants").[1] Plaintiff indicates that:

> After receiving and ignoring CIC's [Plaintiff's] demand letters, on January 17, 2020 – the same day CIC filed suit against RMWW and the Miller Defendants – the Miller Defendants sold property with an address of 425 Rugged Rock Rd, Loveland, CO 80537 (the "Rugged Rock Property"). Upon information and belief, the Rugged Rock Property was not listed on the realtor multiple listing service ("MLS") for Loveland/Fort Collins, but was instead sold as part of a private sale. . . . Unless and until the injunctive relief requested herein is granted, there is a clear and present threat that CIC will lose the benefit of the [Agreement]. CIC simply cannot wait until this case is over to be entitled to protections of the [Agreement]. RMWW and the Miller Defendants must grant immediate access to their financial condition and immediately post collateral in the amount of $205,447.62, failing which CIC should be entitled to liens as requested herein. This is nothing more than what is required of the [Agreement] and/or what is equitable under the circumstances.

(*Id*. at 10.) Although the Agreement requires Defendants to provide Plaintiff with

---

[1] Plaintiff indicates that Defendants Kenneth P. Zetye and Rebecca J. Zetye are engaged in Chapter 7 bankruptcy proceedings, and Plaintiff has stayed its case against those Defendants. Plaintiff further indicates that RMWW "clos[ed] its doors and would not be able to fulfill the remaining work on its Projects." (Doc. # 16 at 10.)

collateral upon demand, the Agreement is not secured by the Rugged Rock Property. In fact, Plaintiff apparently failed to obtain any collateral from Defendants to secure their obligations. Plaintiff has not secured a judgment against the Miller Defendants, nor does it currently have any claim to the Rugged Rock Property or the proceeds from its sale.

## II.     **LEGAL STANDARD**

Injunctive relief is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). A party seeking a preliminary injunction or temporary restraining order must show (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *Kaplan v. Bank of N.Y. Mellon Trust Co.*, No. 10-cv-02802-PAB, 2010 WL 4775725, at *1 (D. Colo. 2010) (citing *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980)) (noting that the four elements apply to both preliminary injunctions and temporary restraining orders and that "the same considerations apply" to both forms of injunctive relief).

It is well established that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Therefore, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered" *Id*. (quoting

3

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). Accordingly, if the movant fails to meet its burden of establishing irreparable injury, courts "need not address the remaining preliminary injunction factors." *N.M. Dep't of Game and Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017) (citing *People for the Ethical Treatment of Prop. Owners v. U.S. Fish and Wildlife Serv.*, 852 F.3d 990, 1008 (10th Cir. 2017) ("If it is not necessary to decide more, it is necessary not to decide more.")); *see also Conry v. Estate of Barker*, No. 14-cv-02672-CMA-KLM, 2017 WL 5952709, at *1 (D. Colo. 2017) (same).

### III. <u>ANALYSIS</u>

Plaintiff has failed to establish a likelihood of irreparable harm, i.e., a significant risk that it will experience harm that cannot be compensated after the fact by money damages. *N.M. Dep't of Game and Fish*, 854 F.3d at 1250 (quoting *Fish*, 840 F.3d at 751–52). Plaintiff argues that "an indemnitor's failure to provide collateral to the surety causes irreparable harm to the surety" and "money damages are incapable of alleviating the injury [Plaintiff] will suffer if an injunction is not entered enforcing [its] right to be placed in funds." (Doc. # 16 at 21–22.) However, the harm Plaintiff is facing is purely economic, and numerous courts have persuasively rejected the specific theories upon which Plaintiff relies.

With respect to surety contracts that involve a collateral security clause such as the contract at issue, courts have held:

> The purpose of a collateral security clause is to provide sureties with access to financial cushioning during the pendency of claims and, where violated, the surety suffers ongoing harm in the form of missing money, but, **whatever the loss, whether to financial security or otherwise, it is**

4

**monetary in character, and may be adequately remedied by a judgment on the merits.**

*Allied World Specialty Ins. Co. v. Abat Lerew Constr., LLC*, No. 8:16CV545, 2017 WL 1476131, at *4 (D. Neb. Apr. 24, 2017) (emphasis added); *see, e.g.*:

- *Ohio Cas. Ins. Co. v. Campbell's Siding & Windows*, No. 1:15-CV-00255-EJL, 2015 WL 6758137, at *3 (D. Idaho Nov. 4, 2015) (denying surety's motion for preliminary injunction because surety "only seeks injunctive relief to require the payment of collateral security which is an economic injury and not irreparable.");

- *Travelers Cas. & Sur. Co. of Am. v. W.P. Rowland Constructors Corp.*, No. CV 12-00390-PHX-FJM, 2012 WL 1718630, at *3 (D. Ariz. May 15, 2012) (denying surety's motion for preliminary injunction because surety "has not shown that it is likely to incur any damages other than the economic cost of paying the bond claims prior to receiving collateral.").

Further, In *Borey v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, the Second Circuit held that the district court erred in granting preliminary injunctive relief when the district court found that "irreparable harm could be found because the surety would forever lose its rights to *quia timet* and exoneration."[2] 934 F.2d 30, 34 (2d Cir. 1991). The Second Circuit explained that:

Even if the surety would "forever" lose these rights—an assumption in which

---

[2] "*Quia timet* and exoneration contain common substantive elements. Specifically, the surety must establish that the debt is presently due (exoneration) or will come due (*quia timet*), that the principal is or will be liable for the debt, and, that absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor." *Borey*, 934 F.2d at 33. Plaintiff's Complaint raises a *Quia timet* claim (Doc. # 1 at 10–12), and its concern that it will lose its rights under the Agreement is the primary basis of its argument that the harm it is facing is irreparable (Doc. # 16 at 21–23).

> we do not join—we have held that irreparable harm does not necessarily follow. In *Abish v. Northwestern Nat'l Insurance Co.*, 924 F.2d 448 (2d Cir. 1991), . . . we held that the loss of a surety's rights to *quia timet* and exoneration does not "cause serious or irreparable consequences." *Id.* at 453. We stated that "[i]n determining whether irreparable harm exists, the critical inquiry is not whether the surety's rights are lost, but whether the loss of those rights will cause serious or irreparable harm." *Id*. We held, in *Abish*, that because the surety's claims for *quia timet* and exoneration relief contemplated a monetary award, the surety would have to establish more to persuade us that it could not "be made whole upon resolution of the merits." *Id*.

*Id*.; *see also*:

- *Nw. Nat. Ins. Co. of Milwaukee, Wisc. v. Alberts*, 937 F.2d 77, 82 (2d Cir. 1991) (holding surety failed to establish any irreparable harm flowing solely from the loss of *quia timet* and exoneration rights);

- *Great Am. Ins. Co. v. Fountain Eng'g, Inc*, No. 15-CIV-10068-JLK, 2015 WL 6395283, at *3 (S.D. Fla. Oct. 22, 2015) (holding that "[t]he fact that plaintiff may, in the interim, be marginally less secure with respect to the availability of a final money judgment [or decree], does not constitute 'irreparable harm' so as to warrant the extraordinary remedy of a preliminary injunction." (citing *Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1157 (S.D.N.Y. 1990));

- *Fed. Ins. Co. v. Dencity, Inc.*, No. SA CV 07-1458 DOC (RNBx), 2008 WL 11342968, at *4 (C.D. Cal. Jan. 28, 2008) (denying surety's motion for preliminary injunction and noting that "[t]he inability to exercise contractual rights does not amount, in itself, to irreparable harm for the purposes of a preliminary injunction.").

This Court considers the foregoing reasoning to be persuasive. Purely economic loss "is usually insufficient to constitute irreparable harm" because economic losses can

readily be compensated with monetary damages. *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1158 (10th Cir. 2011). Thus, in order to be "irreparable," the harm must be "incapable of being 'adequately atoned for in money'; or of the sort that 'the district court cannot remedy following a final determination on the merits.'" *Hunter v. Hirsig*, 614 F. App'x 960, 962 (10th Cir. 2015) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)) (citing *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008)). "Such evidence might include, for example, proof that the monetary loss will probably force the party into bankruptcy," because "[i]n such a situation, there is more than the risk of mere monetary loss." *Borey*, 934 F.2d at 34 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975)).

In the instant case, the harm Plaintiff is facing is purely economic, and it is not facing circumstances such as bankruptcy which might justify preliminary injunctive relief. Plaintiff alleges that Defendants have failed to carry out their financial responsibilities established by the parties' contract, and the nature of the relief that Plaintiff is seeking in the instant Motion highlights the economic nature of the harm at issue. Specifically, Plaintiff requests an order requiring Defendants to "place [Plaintiff] in certified funds in the amount of $205,447.62" as well as a lien in the same amount. (Doc. # 16 at 25.) In effect, Plaintiff concedes that its alleged harm is capable of "being adequately atoned for in money." *Hunter*, 614 F. App'x at 962. Accordingly, the Court finds that Plaintiff's concern that it will "lose the benefit of the [Agreement]" (Doc. # 16 at 10) does not constitute imminent irreparable harm because such a loss can be remedied monetarily.

Moreover, the Court is not persuaded by Plaintiff's argument that Mr. Miller's sale of the Rugged Rock Property indicates that Plaintiff is facing imminent irreparable harm. The Agreement was not secured by the Rugged Rock Property, and Plaintiff does not yet have any legal interest in the Rugged Rock Property. There is no evidence to indicate that the sale was a fraudulent conveyance to avoid a debt to Plaintiff.[3] *Cf. Crow-Watson Properties, Inc. v. Carrier*, 719 P.2d 365, 367 (Colo. App. 1986) (finding defendant intended to hinder creditors when she did not disclose loan encumbering property to purchaser, depleted almost all sales proceeds by transferring large sums as payment for home for herself, purchasing certificate of deposit, purchasing an automobile, and granting numerous interest-free loans to friends).

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 16) is DENIED. It is

FURTHER ORDERED that the preliminary injunction hearing set for March 4, 2020, is VACATED.

DATED: February 28, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[3] If through discovery, e.g., depositions of the Miler Defendants and/or the person to whom title to the Red Rocks Property was transferred, Plaintiff is able to find indicia of a fraudulent conveyance, then it may amend its complaint to assert such a cause of action against the Miller Defendants and the grantee and seek injunctive relief.

8